On behalf of Apollon Andrea McIntyre and the executor, Mr. Frederick Ryan Lusser. On behalf of Bank of America, Mr. Keith Levy. Gentlemen, before we begin, as you'll note, the chair is empty. Justice Zinoff, Catherine Zinoff is the third member of the panel, and although these orals were set some days ago, some weeks ago, she was very unexpectedly called out of town, couldn't be helped. But at the conclusion of your oral argument today, as you know, they are recorded. Justice Zinoff will review those and then the deliberations will take place and thereafter disposition rendered in due course. So with that in mind, gentlemen, are you both ready to proceed? We are, Your Honor. Your Honor, if I may, I would like to reserve five minutes for rebuttal time. Yep. Thank you, Your Honor. That's fine. Your Honor, we're here this morning seeking guidance from this court on the meaning and application of section 20-6 of the Illinois Probate Act. The section says on its face that the probate court has the authority to order the sale or mortgage of property free and clear of all mortgage, judgment, or other means and encumbrances. But the act doesn't say the court must, correct? That is correct, Your Honor. The court may. Which indicates what? It indicates that the court should have some discretion in the matter and exercise in the administration of the estate. So I deem that as giving the court some discretion. It's clear from the record the court knew she had the discretion, correct? Your Honor, no. I think very clearly the judge did not know that. In fact, I just saw her this morning. She was very uncertain as to whether she really had the authority to do this or not. And I think that's fairly clear from the record in large measure, Your Honor, because there are no cases construing 20-6. There's really nothing in the way other than the bold language of the statute to guide the trial court. The bold language of the statute clearly gives the court the power, I think, to do this. But, yes, I think the trial court was troubled by the fact that while the Illinois Mortgage Foreclosure Act is widely used, 20-6 is never used. I think that, by the way, there's a good reason for that, and it's an economic reason rather than a legal reason. Since the end of World War II, housing prices and real estate prices have generally risen. And when prices are rising, there is very little need to have a sale where the sale is insufficient to pay off the liens, the mortgages, and the claims. And it's only in our recent years, particularly since the recession that began in 2008, that this has become an issue. And I believe it is a major issue. Your Honor, I think there is the court, the trial court was stuck and, frankly, lost in terms of two statutes which do not, which provide alternative means for the ordering and sale of real estate, but which do not in any way refer to each other. There is no reference in the Illinois Mortgage Foreclosure Act to the Probate Act, and there's no reference back from 20-6 or 20, the Probate Act, to the Mortgage Foreclosure Act. And in that circumstance, the bank argues that first in time is first in right. The first act, the first action filed that involves the same issues should prevail. Yes, Your Honor. They do make that argument. They make two other arguments as well. That's a very good point. Go ahead. The first, the probate estate was opened first. Well, the argument would be that opening an estate doesn't raise the same issues as a petition for sale. And, yes, the probate estate was opened first, and the jurisdiction of the probate court certainly attached. It's an interim proceeding. And we acted first. Now, mind you, there is nothing whatsoever in either of these two statutes that says what comes first controls, nothing whatsoever. And the only one who acted first was the probate estate. The probate, the executor acted very properly here. She opened the probate estate for her late mother. She put the house on the market for sale. She obtained a contract for $200,000, which would have been enough to pay off the mortgage. But on the eve of closing, she discovered that there were four judgment liens against her mother. It should have been obtained while the mother was alive. And the result of the mortgage liens plus the judgment liens, I'm sorry, plus the mortgage was greater than the sale price. Thus, she could not give good title to the buyer and could not close. The mortgage foreclosure was filed. We then consolidated the mortgage foreclosure with the probate estate, and we continued to market the property. We got a new contract for $205,000. And we asked the court under 20-6 for the authority to make the sale free and clear of all the liens. Your Honor, these two different alternatives are very important because while the Illinois Mortgage Foreclosure Act provides a very slow process, it has got built-in delays to allow the homeowner to redeem the mortgage. So that the homeowner, because we want the homeowner to stay in the house. We want 1085 Pheasant Ridge to be occupied by a homeowner. The Mortgage Foreclosure Act provides a slow process to do this, which culminates in a sheriff's sale, which the court can take due notice, will result in a lower price typically than a fair market sale. The Probate Act, on the other hand, provides for the efficient and expeditious administration of the probate estate, which is including this property, 1085 Pheasant Ridge. And it provides for a sale on the open market. The executor was able to get good contracts from willing buyers. And if our petition had been allowed, Your Honor, 1085 Pheasant Ridge would be occupied by a new owner today. A new family would be living there today. The property would not be empty. Having properties sold at foreclosure sales as a preference to sale on the open market, I'm sure that the neighbors would all agree with me that they would rather see this as a fair market and open market sale. Those are all fine arguments, but they're policy arguments. I would agree with you, Your Honor. The clear language of the statute authorizes the trial court to do this. Now, you mentioned that the Bank of America had argued that first in time, first in right. Bank of America makes three arguments before this court, Your Honor. They do not do it in the alternative. They argue each of them as if they were all true. First in time, first in right, yes. We think we were first. Number two, and by the way, I don't believe first in time, first in right has anything to do with it. Certainly the statute does not say so and no cases say so. Number two, that it was at the mortgagee's election as to whether or not to use 20-6, that it was really up to them, the lender, to make that decision. Once again, nothing in the statute supports that. It is completely inconsistent with the first in time, first in right argument because it is at the mortgagee's election. It doesn't matter who's first. It's the mortgagee who makes the decision. Their third argument is that these statutes somehow can be read together and are somehow working together. They are not. These are two separate paths, and regardless of why that is, the 20-6 has been on the statutes for, we think, over 100 years. Something the General Assembly should address. That certainly is my view as well, Your Honor, but we come here to this court, and I ask this court, we really implore this court to make a published decision, to provide some guidance for the trial courts as Justice Waits was trying to do the right thing here. Before Her Honor, every day, pretty much every day, as Your Honor knows, I have great respect for her. She was struggling with this, but the truth is nobody's ever heard of 20-6. Everybody's heard of the Illinois Mortgage Foreclosure Act, so I do not in any way blame the trial court for having to choose one with no guidance at all from the appellate or Supreme Courts or the General Assembly. She picked the one that is probably the more conservative and traditional and widely used route. Again, your position is that she had the discretion to use 20-6. It's a lot that she didn't, or was at least questioning whether or not she did, and had she known that she had the discretion, she would have gone down that path. That's correct, Your Honor. I believe that had she felt secure, had the trial court felt secure in its authority under 20-6 that it would have ordered the sale, we had a buyer ready, willing, able to go. We were about to close. That was clearly the better route if the authority was available, and I certainly don't blame the trial court for feeling insecure about that, because when you look at a statute that's been on the books for 100 years and there are no appellate court decisions construing it, there is nothing out there to guide the court, I do not in any way, way, shape, or form blame the trial court for its decision. The trial court knew fully well that we were going to be coming over here and asking this court for guidance. Your Honor, I believe I probably used up my 10 minutes, and I will reserve time for a bottle. Thank you, Your Honor. Counsel? Good morning, Your Honors. May it please the Court, Keith Levy on behalf of the Appellate Bank of America. Our position is that the sole issue in this case is whether it's the mortgagee's election, whether it proceeds in the probate act, or through a foreclosure action. We believe that this was addressed in the Funk case by the Supreme Court of Illinois, which strongly indicated in that case that it was the mortgagee's election, and in fact said nothing in the probate code forecloses that election. Throughout the Funk case, they reiterate that position. In Funk, it was an income generating property, and the mortgagee elected to proceed through the probate act in order to get more revenue and get a higher payoff. Once again, throughout that case, the Supreme Court indicates that it is the mortgagee's election, so we do feel it has been addressed in that manner. Also, as far as the statutory interpretation, we feel that the statute says satisfaction. Now, throughout the appellant's brief, they change the order of the statute, and they put satisfaction third after adjusting the equities, because it's fatal that if you have to satisfy the loan first, we would get fully paid. A first secured creditor, fully secured, would get fully paid out of the proceeds of the sale first. They sought a case that says you can have satisfaction without full payment, which is true, but you need a court. You need an agreement, and in this case, we don't have an agreement, whereas in the Funk case, there was an agreement. The mortgagee elected to proceed through the probate act and worked with the executor to do so. So we believe that the statute, even assuming arguendo that you believe that 26B applies, can't be read the way that the appellant would have it be read. We also believe that this reading flies in the face of the longstanding principle that fully secured first creditors get paid first. Additionally, the appellant's reading gives no temporal limit, so once again, even if they're correct, at this point, we were post-judgment in the foreclosure. At what point can they step in and take over? It seems to be quite a waste of judicial resources, all the money, attorney's time. I'm sorry, could you back up and restate that? Yes, Your Honor. The appellant's reading of the statute, there's no temporal limit of when they could come in, so we filed our foreclosure first before any action was brought to sell this property in the probate act. And you're saying that opening the estate is not, if we were to agree first in time is first and right, that just opening the estate is not the first action? Correct, Your Honor. As far as dealing with the real estate, there could be other assets of an estate. In this case, there isn't. The only asset of the estate is this real estate, and they didn't bring any action to sell the property. We believe it's when they first bring a motion to sell the property or do something with the property in the probate case that would trigger that. But in this case, they didn't. We filed first, and if their reading is correct, in other cases, ours or others, when does that scope end? Like I said, it could be post-judgment. It could be post-confirmation, and they bring a motion in the probate court, and then probate act kicks in, and we've wasted judicial resources, money, time. So your position would be that mortgage foreclosures proceed more quickly than a probate action? Not necessarily, Your Honor. My position would be that we could have filed our case, and let's say we file our case, and a borrower dies during the pendency of our case. But that's not what happened here. No, it's not, but I'm using it illustrative of what this reading of the statute could cause issues with. And I'm saying that in this case, we work post-judgment. We've got to roll back our foreclosure. We've wasted the foreclosure court's time. We've wasted our client's time, money, attorney's time. It seems to fly in the face of the best use of all resources in order to for what gain? There's no gain in the probate act over the foreclosure act. The sale in this case would have gone ahead. We disagree with the appellant's contention that it necessarily would have brought in a lower price than the price that they had in a contract. It could very well have brought in just as high of a price. In fact, the Mortgage Foreclosure Act is intended to bring the highest and best price through the judicial sales process. That doesn't happen that often, though, does it? No, Your Honor. This case is rare, and in this case, most of these leads could have been paid off. The only party that would not have been paid off would have been the executor and the attorneys for the executor. So this is a rare case where the property could have brought in enough to not only satisfy the first fully secure mortgage but several of the junior leads attached to the property. So we're saying that there has to be some limit on that time, even by the appellant's reading of the statute, and they haven't provided that. And then, like Your Honor pointed out, the statute is permissive. It allows for discretion, and the Supreme Court in Funk noted that and stated it's mortgagee's election and it's discretionary, and it's got to make sense. How can it be discretionary on the part of the trial court and be solely your election? Well, the trial court can deny a motion. We believe it's our election whether we file and proceed, but the court can say no. So for those reasons, Your Honor, we would ask that the circuit court be affirmed. Thanks. Any other questions? Thank you very much. Do you wish to reply? Yes, Your Honor. Counsel for the Bank of America says that we incorrectly read 20-6 because first everything must be satisfied before it is adjusted. They must be first paid in full. Their lien must be completely satisfied before the court can adjust. That, of course, is meaningless. If the liens are all fully satisfied from the sale, what is there to adjust? Nothing. The only reasonable interpretation of 20-6 is the way that we have urged this court that the court should order the sale of the property free and clear of all liens and then adjust and deem satisfied the liens from the proceeds. Because that's all that's left. Exactly. That's what we've got. Nothing else. That's correct. That's what we've got. We pay out what we've got. This is like a bankruptcy. Very much like. I particularly want to thank counsel for reminding me of the estate of Funk because the estate of Funk is the poster child for 20-6. In the estate of Funk, the poor widow was the executor of this estate and she continued to farm this land and administer this estate for 20 years. 20 years trying to pay down these mortgage loans. And they go through. The loan expert court goes through in excruciating detail all of the trauma this poor woman, the widow, went through. She tries to resign because she's having seizures and stress. She files for personal bankruptcy. And the trial court won't accept her resignation because they can't get anybody else to do the job. Indeed, it's an insolvent estate. No one else would do it. In Funk, there is absolutely no indication that anyone ever considered using 20-6. It's not mentioned. It's not discussed. It is completely absent from the long and agonizing struggle that they went through in that estate. Had they used a 20-6, had they been, and I assume probably weren't even aware of it, had they been aware of it, it would have avoided the 20-year probate disaster. Thank you, Your Honors. We ask that this court reverse the trial court, remand it with instructions to reconsider our petition for leave to sale, and we'll have 1085 Pheasant Ridge sold in six months and be done. Thank you, Your Honor. We are adjourned for the day, then. Thank you, both sides, very much.